# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 29, 2013

Lyle W. Cayce
Clerk

No. 12-50569

JOSEPH A. REINAGEL, JR.; DIA J. REINAGEL,

Plaintiffs - Appellants

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

ON PETITION FOR REHEARING

Before HIGGINBOTHAM, OWEN, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Treating Appellants' Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED, but we amend the prior opinion, 722 F.3d 700 (5th Cir. 2013), solely to add footnote 30. As amended, the opinion is as follows:

In this case, mortgagors who defaulted on their note seek to enjoin a bank

from foreclosing, contending that the assignments by which the bank obtained the note and corresponding deed of trust were "robo-signed" and therefore invalid. The district court granted the bank's motion to dismiss. We affirm.

**I.**

In February 2004, Dia and Joseph Reinagel, the appellants, purchased a property in Helotes, Texas for $307,840, obtaining the necessary financing from a mortgage lender not party to this appeal. In May 2006, the Reinagels refinanced, obtaining a $360,000 home-equity loan from Argent Mortage Company, LLC ("Argent") in exchange for a promissory note as well as a deed of trust securing the note.[1] Argent apparently sold the Reinagels' loan to Deutsche Bank National Trust Company ("Deutsche Bank"), the appellee, shortly after origination, at which point Deutsche Bank pooled it with other mortgage loans in a securitization transaction and sold the resulting mortgage-backed securities to investors. As alleged in the amended complaint, the Pooling and Servicing Agreement ("PSA") that governed the trust in which Deutsche Bank, as trustee, held the mortgage loans provided that no loans could be transferred into the trust after October 1, 2006.

Notwithstanding the PSA's closing date, neither Argent nor Deutsche Bank formally documented the sale of the Reinagels' loan until January 23, 2008, a date that roughly coincides with the zenith of the subprime mortgage crisis.[2] On that date, a Ms. Dawn L. Reynolds, purporting to act as the "authorized agent" of "Citi Residential Lending, Inc. . . . , [a]ttorney-in-[f]act for

---

[1] Though a deed of trust is formally distinct from a mortgage, Texas courts tend to use the two terms interchangeably. For purposes of this appeal, we do the same.

[2] *See, e.g.*, Tim Murphy, *Subprime Mortgages Linked to Rise in Foreclosures*, N.Y. TIMES, Aug. 5, 2007, *available at* http://www.nytimes.com/2007/08/05/nyregion/nyregion special2/05mainwe.html.

Argent," executed an instrument assigning the deed of trust "to Deutsche Bank . . . , as Trustee, in trust for the registered Holders of Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-M1." Ms. Reynolds acknowledged her signature before a California notary and the instrument was filed and recorded in Bexar County on January 30, 2008. The instrument does not reference the promissory note secured by the deed of trust.

On February 13, 2009, more than a year after the initial assignment, a Mr. Brian Bly executed a second instrument assigning the deed of trust to Deutsche Bank, purporting to act in his capacity as "Vice President" of "Citi Residential Lending, Inc., . . . attorney-in-fact for Argent." Unlike the first assignment, however, the second instrument also expressly transferred "the certain note(s) described [in the deed of trust] together with all interest secured thereby, all liens, and any rights due or to become due thereon." Mr. Bly acknowledged his signature before a Florida notary and the instrument was e-filed and e-recorded in Bexar County on February 17, 2009.

At some point in 2009 or early 2010, the Reinagels defaulted on the note, and in April 2010, Deutsche Bank sought a judicial order authorizing foreclosure. Deutsche Bank asserted that it was a "mortgagee" under Texas Property Code § 51.0001(4) and therefore had the right to foreclose on the Reinagel's property. Under § 51.0001(4), a mortgagee can be (1) "the grantee, beneficiary, owner, or holder of a [deed of trust]," or (2) "if the [deed of trust] has been assigned of record, the last person to whom the [deed of trust] has been assigned of record."[3] Deutsche Bank claimed that it qualified as a mortgagee on either wing, as the 2008 and 2009 assignments rendered it owner and holder, as

---

[3] TEX. PROP. CODE § 51.0001(4), (6). Although not relevant here, a "mortgagee" can also be a "book-entry system," *id.* § 51.0001(4), such as the national Mortgage Electronic Registration System, *Campbell v. MERS, Inc.*, 2012 WL 1839357 at *4 (Tex. Ct. App. 2012).

well as assignee of record, of the deed of trust. The state court apparently agreed, granting the order.

In October 2011, the Reinagels filed suit in Texas state court to temporarily enjoin the foreclosure and obtain a declaratory judgment that Deutsche Bank lacked standing to foreclose. The Reinagels claimed that the 2008 and 2009 assignments were both "robo-signed" and therefore void. "Robo-signing" is the colloquial term the media, politicians, and consumer advocates have used to describe an array of questionable practices banks deployed to perfect their right to foreclose in the wake of the subprime mortgage crisis, practices that included having bank employees or third-party contractors: (1) execute and acknowledge transfer documents in large quantities within a short period of time, often without the purported assignor's authorization and outside of the presence of the notary certifying the acknowledgment,[4] and (2) swear out affidavits confirming the existence of missing pieces of loan documentation, without personal knowledge and often outside of the presence of the notary.[5]

The state court granted the Reinagels' request for a temporary injunction, setting trial for June 4, 2012. On November 21, 2011, Deutsche Bank removed the Reinagels' suit to the Western District of Texas, invoking diversity. In their amended complaint, the Reinagels elaborated on their allegations of "robo-signing," claiming that the January 2008 assignment was void because Ms. Reynolds "appears to be an employee of Citi Residential Lending[,] [Inc.] and not

---

[4] *See, e.g.*, CONG. OVERSIGHT PANEL, NOVEMBER OVERSIGHT REPORT: EXAMINING THE CONSEQUENCES OF MORTGAGE IRREGULARITIES FOR FINANCIAL STABILITY AND FORECLOSURE MITIGATION 9 (2010); *see also* Nick Timiraos, *Banks Hit Hurdle to Foreclosures*, WALL ST. J., June 1, 2011 ("In some cases, borrowers are showing courts that banks failed to properly assign ownership of mortgages after they were pooled into mortgage-backed securities. . . . Curing incomplete mortgage assignments can be tricky because many lenders that originated subprime loans are still listed as the owner but have gone out of business.").

[5] *See, e.g.*, Andrew Martin, *GMAC Mortgage Expands Review of Its Foreclosures*, N.Y. TIMES, Oct. 12, 2010, at B9; CONG. OVERSIGHT PANEL, *supra* note 4, at 40.

Argent," and that the February 2009 assignment was void because Mr. Bly purported to execute it as "Vice President of Citi . . . as attorney in fact for Argent" when he in fact worked for a third-party contractor, Nationwide Title Clearing. The Reinagels also asserted that the second assignment was void as a forgery, as "Mr. Bly's own deposition testimony taken in another case indicates that his signature was simply 'scanned' onto documents and then notarized as an original and recorded." Finally, the Reinagels claimed, both assignments were void as violating the PSA, which specified that no mortgage could be transferred into Deutsche Bank's pooling trust after October 1, 2006.

Deutsche Bank moved to dismiss the Reinagels' amended complaint, urging that the Reinagels lacked standing to challenge the validity of the 2008 and 2009 assignments because they were not parties to those agreements. In the alternative, Deutsche Bank argued that "'robo-signing' claims are not applicable to assignments," because "an assignment is a contract, and is distinguishable from an affidavit, which is the document typically challenged in connection with 'robo-signing' allegations." Finally, though Deutsche Bank did not dispute that the assignments violated the PSA, it argued that the Reinagels lacked standing to enforce that agreement.

The district court granted Deutsche Bank's motion. Though the court "disagree[d] with [Deutsche Bank's] argument that the invalidity of the assignments would have no impact on its ability to foreclose," it concluded that "[the Reinagels'] allegations of invalidity fail as a matter of law." First, the court reasoned, the Reinagels pointed to "no case that has invalidated an assignment because it was robo-signed." Second, the court observed, "[the Reinagels] cite no authority for the proposition that the violations of the PSA make the assignment invalid, and due to th[eir] lack of standing, they cannot assert [a] claim for breach of the PSA itself." The Reinagels appeal.

5

## II.

The first issue on appeal is whether the Reinagels have standing to challenge the validity of the transactions by which Argent, the loan originator, purportedly assigned the deed of trust and corresponding promissory note to Deutsche Bank. Deutsche Bank urges that "the law is well settled that a stranger to a contract lacks standing to challenge [that] contract," and that "[n]umerous federal district courts have recognized that plaintiffs lack standing to challenge the assignment of security instruments in cases similar to the present." The Reinagels rejoin that "Texas state and federal courts routinely allow a homeowner to challenge the chain of assignments by which a party claims a right to foreclose," dismissing the cases relied upon by Deutsche Bank as incorrectly decided.

We agree with the Reinagels. To be sure, Texas courts have held that a non-party to a contract cannot enforce the contract unless she is an intended third-party beneficiary,[6] occasionally couching this principle in terms of "standing."[7] Here, however, the Reinagels are not attempting to enforce the terms of the instruments of assignment; to the contrary, they urge that the assignments are void ab initio. Though "the law is settled" in Texas that an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor, Texas courts follow the majority rule that the obligor *may* defend "on any ground which renders the assignment void."[8] A contrary rule would lead to

---

[6] *See, e.g.*, *Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007).

[7] *See, e.g.*, *Neal v. SMC Corp.*, 99 S.W.3d 813, 817 (Tex. Ct. App. 2003).

[8] *Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Ct. App. 1975) (citing *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Ct. App. 1959)); *see also, e.g.*, 6A C.J.S. ASSIGNMENTS § 132 (2013) ("A debtor may, generally, assert against an assignee . . . , any matters rendering the assignment absolutely invalid . . . , such as[] the nonassignability of the right attempted to be assigned, or a prior revocation of the assignment."); *Murphy v. Aurora*

the odd result that Deutsche Bank could foreclose on the Reinagels' property though it is not a valid party to the deed of trust or promissory note, which, by Deusche Bank's reasoning, should mean that it lacks "standing" to foreclose.

## III.

The next question is whether the Reinagels' allegations, taken as true, establish that Deutsche Bank lacks authority to foreclose under the deed of trust. To answer this question, we begin by examining whether the first assignment is itself sufficient to convey such authority, or whether both assignments are necessary — an issue not addressed by the parties and ignored by the district court. As aforementioned, the first instrument assigned only the deed of trust, whereas the second instrument assigned both the deed of trust and "the certain note(s) described therein." Presumably, Deutsche Bank arranged the second conveyance because of the common-law rule that the assignment of a mortgage alone is a nullity,[9] a rule based on the intuitive principle that a party seeking to foreclose must have the right to enforce the debt it seeks to satisfy.[10] However, under the *Restatement (Third) of Property: Mortgages*, the transfer of a mortgage *presumptively* includes the note secured by the mortgage, whether or not the instrument of assignment expressly references the note.[11] Under the

---

*Loan Servs., LLC*, 699 F.3d 1028, 1033 (8th Cir. 2012) (recognizing that mortgagors can defend against foreclosure by establishing a fatal defect in the purported mortgagee's chain of title).

[9] *E.g.*, *Best Fertilizers of Ariz., Inc. v. Burns*, 571 P.2d 675, 676 (Ariz. Ct. App. 1977) ("The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow.").

[10] *See, e.g.*, RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 5.4(c) (1997) ("A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.").

[11] *Id.* § 5.4(b). As the comments to § 5.4 of the *Restatement (Third) of Property: Mortgages* explain:
   It is conceivable that on rare occasions a mortgagee will wish to disassociate the

*Restatement*'s approach, then, the first assignment is itself sufficient to give Deutsche Bank authority to foreclose, and the validity of the second assignment is irrelevant.[12] Texas courts tend to follow the *Restatement*;[13] however, as they have never expressly adopted its note-follows-the-mortgage presumption,[14] we examine the Reinagels' objections to both instruments.

The Reinagels challenge the validity of the first instrument on the ground that Ms. Reynolds executed it as the "authorized agent" of Argent even though she was employed by Citi Residential Leasing, Inc. ("Citi"), implying — but never directly asserting — that Reynolds must have therefore lacked authority to execute the assignment. However, as reflected in the attachments to the pleadings, Reynolds signed as the "authorized agent" of "*Citi* . . . , [a]ttorney-in-[f]act for Argent." As the Reinagels conspicuously fail to allege either that Ms. Reynolds lacked authority to act on behalf of Citi or that Citi lacked authority to act on behalf of Argent — let alone plead facts to support such allegations — there is no record basis for concluding that Ms. Reynolds misrepresented the scope of her authority in executing the assignment. In short, the Reinagels' challenge to the validity of the first assignment fails on its own terms.

---

> obligation and the mortgage, but that result should follow only upon evidence that the parties to the transfer so agreed. The far more common intent is to keep the two rights combined. . . . This section's purpose is generally to achieve the same result even if one of the two aspects of the transfer is omitted.

*Id.* § 5.4 cmt. a.

[12] Notably, the Reinagels do *not* argue that Deutsche Bank must produce the original, wet-ink note in order to foreclose. As the Reinagels concede, most courts, including district courts in this Circuit, have rejected the "show-me-the-note" defense, holding that though a mortgagee must establish that it owns the note to foreclose, it need not produce the original.

[13] *See, e.g.*, *Conversion Props., LLC v. Kessler*, 994 S.W.2d 810, 813 (Tex. Ct. App. 1999).

[14] *But see Kramer v. Fed'l Nat'l Mortg. Ass'n*, 2012 WL 3027990, at *5–6 (W.D. Tex. 2012) (Sparks, J.) (suggesting that the *Restatement*'s approach governs).

Turning to the second assignment, the Reinagels challenge it as void because Mr. Bly executed the instrument as "Vice President" of Citi — Argent's authorized agent — even though he was actually an employee of a third-party contractor, Nationwide Title Clearing. However, in *Nobles v. Marcus*,[15] the Texas Supreme Court clarified that a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal — here, Citi (or Argent through Citi).[16] As "[Texas] law is settled that the obligors of a claim . . . may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only,"[17] Bly's alleged lack of authority, even accepted as true, does not furnish the Reinagels with a basis to challenge the second assignment.[18]

The Reinagels also contend that the second assignment is void as a "forgery," reasoning that Bly "has testified that his signature was scanned onto documents and then notarized as an original." This argument is a red herring. Texas recognizes typed or stamped signatures — and presumably also scanned signatures — so long as they are rendered by or at the direction of the signer,[19]

---

[15] 533 S.W.2d 923 (Tex. 1976).

[16] *Id.* at 926.

[17] *Tri-Cities Const.*, 523 S.W.2d at 430 (citing *Glass*, 330 S.W.2d at 537); *see also* 29 RICHARD A. LORD, WILLISTON ON CONTRACTS § 74:50 (4th ed. 2012) ("If the objection to the validity of an assignment is not that it is void but voidable only at the option of the assignor, or of some third person, the debtor has no legal defense whether or not action is brought in the assignee's name, for it cannot be assumed that the assignor is desirous of avoiding the assignment.").

[18] *See Nobles*, 533 S.W.2d at 926–27 ("It is settled that . . . a deed [executed by a person fraudulently misrepresenting his agency] is valid and represents prima facie evidence of title until there has been a successful suit to set it aside . . . [which] can only be maintained by the defrauded [principal].").

[19] *See, e.g.*, *Stout v. Oliveira*, 153 S.W.2d 590, 596 (Tex. Ct. App. 1941); *Mondragon v. Mondragon*, 257 S.W. 215 (Tex. 1923); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 134

and the Reinagels do not allege that Bly's signature was scanned onto the document without his authorization.[20] Moreover, acknowledgments are valid as long as they are made in the presence of the notary and meet certain other formalities the Reinagels do not challenge here; there is no requirement that the affiant affix his signature in wet ink.[21] Finally, even if Bly's acknowledgment is defective,[22] counsel for the Reinagels conceded during oral argument "that there is no dispositive law that says [an assignment of a deed of trust] has to be a notarized document."[23] While mortgage assignments must be acknowledged to be *recorded*,[24] Texas's recording statute protects only subsequent purchasers

---

(1981) ("The signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer.").

[20] Indeed, the Reinagels attribute the scanning to Bly, claiming that "*Mr. Bly's conduct clearly falls within th[e] provision [of the Texas Penal Code that criminalizes forgery]*" (emphasis added).

[21] *See* TEX. CIV. PRACT. & REMEDIES CODE §§ 121.004, 121.007.

[22] The Reinagels allege that Bly's signature was scanned onto the assignment, an allegation from which one might infer that Bly did not actually "appear before" the notary as required to render an acknowledgment valid under Texas law. TEX. CIV. PRACT. & REMEDIES CODE § 121.004. The concurrence concludes that such a defect in the acknowledgment may render the underlying assignment a forgery. We disagree. Texas contract law is clear that "[f]orgery is the making without authority of a false instrument in writing, *purporting to be the act of another*." *Nobles*, 533 S.W.2d at 926 (emphasis added). Here, Bly executed the assignment, and the Reinagels do not allege that Bly's signature was forged without his authorization. Indeed, they suggest that Bly himself scanned his signature onto the document. Hence, the underlying assignment is not void as a forgery. *Cf.* 1A C.J.S. ACKNOWLEDGMENTS § 10 (2013) ("An acknowledgment of an instrument is not the same as the instrument itself. Thus, except where formal acknowledgment is made essential to the validity of an instrument by statute, where an attempted acknowledgment is defective or irregular, the instrument is not thereby invalidated as between the parties, or their heirs, or representatives.").

[23] *See, e.g.*, C.J.S. MORTGAGES § 417 (2013) ("[I]t is not necessary to the validity of an assignment of a mortgage that it should be acknowledged or attested by witnesses.").

[24] TEX. PROP. CODE. § 12.001(b).

for value and without notice.[25] That is, while defects in the acknowledgment might prevent Deutsche Bank from foreclosing had a third party purchased the underlying real estate from the Reinagels without actual knowledge of the mortgage,[26] they do not affect Deutsche Bank's rights against the Reinagels.[27]

Finally, the Reinagels claim that both assignments are void because they violated the PSA that governed Deutsche Bank's Series 2006-M1 mortgage pool. True enough, the PSA provided that no mortgages could be transferred into Deutsche Bank's pooling trust after October 1, 2006 — more than a year before the first assignment. But as the Reinagels concede that they are not party to the PSA, they have no right to enforce its terms unless they are its intended third-party beneficiaries. The Texas Supreme Court has established "a presumption . . . that parties contracted for themselves," which applies "unless it 'clearly appears' that they intended a third party to benefit from the contract."[28] Here,

---

[25] TEX. PROP. CODE. § 13.001(a). It matters not that the Texas Property Code defines "mortgagee" to include "the last person to whom [the deed of trust] has been assigned *of record*," as this definition is not exhaustive and applies only "*if* the [deed of trust] has been assigned of record." *See* TEX. PROP. CODE § 51.0001(4). The definition of "mortgagee" also includes "the grantee, beneficiary, *owner, or holder* of [the deed of trust]," *see id.* (emphasis added), a definition broad enough to accommodate assignees who fail to record.

[26] We use the term "might" deliberately, as "the general rule . . . is that a defect in the acknowledgment of an instrument . . . , which is not apparent on the face of the instrument . . . does not prevent the recordation from being constructive notice to persons who may be affected by the transaction recorded." 59 A.L.R.2D 1299 § 25 (2013) (collecting cases).

[27] *See e.g.*, RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 5.4 cmt. b (1997); 55 AM. JUR. 2D MORTGAGES § 924 (2013); 3 TEX. FORMS LEGAL & BUS. § 3:60 (2012). Admittedly, the Texas Local Government Code declares that the assignment of a recorded instrument must itself be recorded. *See* TEX. LOCAL GOV'T CODE § 192.007(a). However, this obscure provision has never been cited in a state court decision and is best read as a procedural directive to county clerks, not as a prerequisite to the validity of assignments. *See Miller v. Homecoming Fin., LLC*, 881 F. Supp. 2d 825, 830 (S.D. Tex. 2012) (noting that "[t]he legal consequences of failing to comply with [§ 192.007(a)] are unclear"); *KCB Equities, Inc. v. HSBC Bank USA, Nat'l Ass'n*, 2012 WL 1985899, at *2 (Tex. Ct. App. 2012) (unpublished) (rejecting argument that assignment of recorded mortgage must itself be recorded to be effective).

[28] *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011).

the Reinagels claim that they are third-party beneficiaries because the PSA was an integral part of a securitization transaction that enabled them to obtain a home-equity loan; however, they fail to state any facts indicating that the parties to the PSA *intended* that benefit.[29] Moreover, even assuming that the Reinagels are third-party beneficiaries, the fact that the assignments violated the PSA — a separate contract — would not render the assignments void, but merely entitle the Reinagels to sue for breach of the PSA.

In sum, the first assignment is valid and, under the *Restatement*'s note-follows-the-mortgage presumption, vests Deutsche Bank with authority to foreclose on the Reinagels' property.[30] However, because the second assignment is also valid — at least as against the Reinagels — we need not determine today whether the Texas Supreme Court would follow the *Restatement*. Our holding is a narrow one: we merely reaffirm that under Texas law, facially valid assignments cannot be challenged for want of authority except by the defrauded assignor. We do not condone "robo-signing" more broadly and remind that bank employees or contractors who commit forgery or prepare false affidavits subject themselves and their supervisors to civil and criminal liability.

## IV.

The judgment of the district court is AFFIRMED.

---

[29] In reality, of course, a PSA is executed to benefit the investors who buy securities backed by the mortgage pool — investors who would be harmed by enforcing the PSA to keep mortgages out of the pooling trust. Unsurprisingly, courts invariably deny mortgagors third-party status to enforce PSAs. *See, e.g.*, *In re Walker*, 466 B.R. 271, 284–85 (Bankr. E.D. Pa. 2012); *Kelly v. Deutsche Bank Nat'l Trust Co.*, 789 F. Supp. 2d 262, 267–68 (D. Mass. 2011); *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625–26 (S.D. Tex. 2010).

[30] *See also Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) (holding that in Texas "the party to foreclose need not possess the note itself" and that "the mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure").

JAMES E. GRAVES, JR., Circuit Judge, concurring in the judgment only:

I concur in the judgment and write separately to express three concerns with the majority's opinion. First, I disagree with the majority that the first assignment was valid and that "Texas courts tend to follow the *Restatement*." Indeed, Texas courts have not "expressly adopted" the *Restatement*'s note-follows-the-mortgage presumption precisely because longstanding United States Supreme Court and Texas precedent *requires* that a foreclosing party be the holder of the promissory note in order to foreclose. *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."); *accord Nat'l Live Stock Bank v. First Nat'l Bank*, 203 U.S. 296, 306 (1906); *Baldwin v. State of Mo.*, 281 U.S. 586, 596 (1930) (Stone, J., concurring); *see also Cadle Co. v. Regency Homes, Inc.*, 21 S.W.3d 670, 674 (Tex. App. 2000) (holding that, in order to foreclose, the party seeking to enforce the note must show it is the owner and holder of the note).[1]

Applying Texas law, this court has also held that the assignor must assign the promissory note, not just the mortgage:

> The rule is fully recognized in this state that a mortgage to secure a negotiable promissory note is merely an incident to the debt, and passes by assignment or transfer of the note . . . . The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.

---

[1] This, of course, does not require the owner and holder of the note to produce the actual original note at the time of foreclosure. *Cf. Cadle Co.*, 21 S.W. 3d at 674 (citing *Commercial Serv. of Perry, Inc. v. Wooldridge*, 968 S.W.2d 560, 564 (Tex. App. 1998) ("To collect on a promissory note, a plaintiff must establish: (1) the existence of the note in question, (2) the defendant signed the note, (3) the plaintiff is the owner and holder of the note, and (4) a certain balance is due and owing on the note.").

*Kirby Lumber Corp. v. Williams*, 230 F.2d 330, 333 (5th Cir. 1956) (quoting *Van Burkleo v. Sw. Mfg. Co.*, 39 S.W. 1085, 1087 (Tex. Civ. App. 1896); *Gough v. Home Owners Loan Corp.*, 135 S.W.2d 771 (Tex. Civ. App. 1939)). The United States District Court for the Northern District of Texas recently came to the same conclusion. *See McCarthy v. Bank of Am., NA*, 2011 WL 6754064 at *3-4 (N.D. Tex. Dec. 22, 2011) (requiring foreclosing party to be holder of promissory note, not just holder of mortgage). Indeed, the courts have a reason for adopting these requirements—the note is the obligation and the mortgage secures the obligation. It is only logical that a lender must hold the obligation in order to foreclose on the security for that obligation. Nevertheless, I concur in the judgment because the majority correctly holds that Texas courts have never expressly adopted the *Restatement*'s note-follows-the-mortgage presumption. Moreover, since the second assignment was valid, there is no need to decide the validity of the first assignment.

Second, I do not agree that the Reinagels' forgery argument is a red herring. Acknowledging a document at a different time or place than what was in fact the case is included in the Texas Penal Code's definition of "forge." Tex. Penal Code § 32.21(a)(1)(A). And forgery makes an assignment *void*, not voidable. *See, e.g., Garcia v. Garza*, 311 S.W.3d 28, 44 (Tex. App. 2010); *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex. App. 1992). I disagree with the majority that, even if the acknowledgment was improper, it did not invalidate the second assignment because assignments are not required to be notarized in Texas. This is immaterial—regardless of whether Bryan Bly was *required* to sign the original assignment in wet ink or to have his signature notarized, the Reinagels claim that his signature *was* notarized at a time or place different than where Bly actually was.[2] This satisfies the definition of

---

[2] The Reinagels claim that Bly admitted in his own deposition testimony from another case that his signature was "scanned" onto documents and then notarized as an original and

"forge" under the Texas Penal Code. The Reinagels, however, did not sufficiently plead or brief this argument, having raised it for the first time in their reply brief. *United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009) ("This court does not entertain arguments raised for the first time in a reply brief."). Because the Reinagels have waived the argument, I concur in the judgment.

Third, while the majority is technically correct that "courts invariably deny mortgagors third-party status to enforce PSAs", the Reinagels are not seeking third-party status to enforce the PSA. Instead, the Reinagels "point to defects in the securitization process as evidence that neither title nor possession of the note passed to the [party] who sought to foreclose their mortgages. Thus, the Plaintiffs seek only to use the breaches as evidence that the party seeking to foreclose is not the owner of their note." *Ball v. Bank of N.Y.*, 2012 WL 6645695 at \*4 (W.D. Mo. Dec. 20, 2012) (permitting homeowners to challenge foreclosures based on violation of the PSA). It makes very little sense that the Reinagels have a right to challenge the assignments based on fraud but lack the right to challenge the assignments based on a violation of the PSA. In my view, both bases for challenging the assignments are valid, and should be considered on the

---

recorded. Nevertheless, Bobbie Jo Stoldt, the Florida notary that purportedly witnessed Bly's execution of the second assignment in Pinellas County, Florida, attested in the assignment's certificate of acknowledgment that Bly acknowledged the assignment "*before me* this 13th day of February in the year 2009." (emphasis added). She also attested that Bly was "personally known to me to be the Vice President of Citi Residential Lending, Inc. . . . ."

Florida law requires a notary to, *inter alia*, include in the certificate of acknowledgment the "venue stating the location of the notarization," "the exact date of the notarial act," and attest that "[t]hat the signer personally appeared before the notary public at the time of the notarization." Fla. Stat. § 117.05(4). Thus, it appears that, if Bly was not in Stoldt's presence because his signature was "scanned," the notarization also violated Florida's notary law. In addition, the law states that "[a] notary public may not notarize a signature on a document unless he or she personally knows, or has satisfactory evidence, that the person whose signature is to be notarized is the individual who is described in and who is executing the instrument." *Id.* § 117.05(5).

merits. Nevertheless, given the lack of evidence that the Reinagels may be subject to double-collection,[3] I concur in the judgment.

---

[3] The *Ball* court announced that its conclusion was supported by caselaw "which held that a debtor generally lacks standing to contest the validity of an assignment of debt, except if the debtor will be prejudiced. One form of prejudice is the potential that the *debtor will be exposed to multiple judgments*." *Id.* at *5 (emphasis added) (citing, *inter alia*, *Barker v. Danner*, 903 S.W.2d 950, 955 (Mo. Ct. App.1995) ("[T]he only interest of the obligor being that he shall be required to pay his debt to but one person."); *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. Oct. 28, 2010) ("Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice.")). "In fact," continued the court, "this is the very possibility that possession of the note is meant to prevent." *Id.* (citing *In re Washington*, 468 B.R. 846, 853 (Bankr. W.D. Mo. 2011) ("Possession of the note insures that this creditor, and not an unknown one, is the one entitled to exercise rights under the deed of trust, and that the debtor will not be obligated to pay twice.")). Here, however, the Reinagels admit they made their payments to Deutsche Bank and had been attempting to negotiate the amount of those payments with Deutsche Bank. Thus, there is no indication that the Reinagels were confused as to which lender to pay, or that a significant possibility exists of Argent attempting to collect on the note.