# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 8, 2013

No. 12-50815
Summary Calendar

Lyle W. Cayce
Clerk

CAROL L. REEVES,

Plaintiff - Appellant

v.

WELLS FARGO HOME MORTGAGE, also known as Kimberly Biery; WELLS FARGO BANK NATIONAL ASSOCIATION, also known as Scott Holzemiester; BARRETT FRAPIER DAFFIN TURNER & ENGEL, LIMITED LIABILITY CORPORATION; BARRETT DAFFIN FRAPPIER TURNER & ENGEL; MERS, (Mortgage Electronic Registration System),

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:10-CV-240

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Carol Reeves argues that Wells Fargo Home Mortgage and Wells Fargo Bank National Association (collectively "Wells Fargo") wrongfully initiated foreclosure proceedings after she defaulted on her loan, because they did not own

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the promissory note securing the mortgage. Because we find that Reeves did not establish a genuine issue of material fact as to the note's ownership, we AFFIRM the district court's grant of summary judgment to Defendants.

## FACTS AND PROCEEDINGS

In April 2004, Fern L. Gillespie ("Gillespie"), then known as Fern L. Stevenson, executed a Deed of Trust and a Promissory Note (the "Note") on the property located at 2500 Penwood Drive, El Paso, Texas (the "property"). The Note identified the lender as "PlainsCapital McAfee Mortgage Company and its successors and assigns." Gillespie promised to pay the principal sum of $62,583, plus interest, to PlainsCapital. The loan was secured by the Deed of Trust, transferring interest in the property to Carl W. Odom, the named trustee. The Deed of Trust identified the beneficiary as "Mortgage Electronic Registration Systems, Inc. ('MERS'), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns)." "Lender" is identified as "PlainsCapital McAfee Mortgage Company."

There are two undated signature stamps on the last page of the Note as it appears in the record. One stamp reads: "Pay to the order of Wells Fargo Bank, N.A. Without Recourse PlainsCapital McAfee Mortgage Company, Kelly Summers, Assistant Secretary." The other states: "Without Recourse Pay to the Order of Wells Fargo Bank, N.A. By Amy Sharp, Vice President, Loan Documentation." The stamps bear the signatures of Summers and Sharp, respectively. In an affidavit submitted to the district court, Michael Dolan, an operations analyst for Wells Fargo Bank, stated that PlainsCapital endorsed the note to Wells Fargo on July 29, 2004, without recourse, and that "Wells Fargo has been the owner and holder of the Note since July 29, 2004." Dolan also stated: "Under the Deed of Trust, MERS remained a beneficiary of record as 'nominee for Lender and Lender's successors and assigns;' therefore, MERS became the nominee for Wells Fargo once the Note was transferred to Wells

Fargo." Gillespie began making monthly payments on the Note to Wells Fargo in August 2004.

In 2007, Gillespie moved out of state, sold the property to her daughter, Carol Reeves, and filed a quitclaim deed conveying her interest in the property to Reeves. Reeves was unable to replace Gillespie as the named borrower on the Note and the Deed of Trust, but she did make payments on the Note. Reeves made her last payment on October 29, 2009 to cover the month of November 2009. She and Gillespie had "becom[e] concerned about who in fact owned the Note and Mortgage" and they began corresponding with Wells Fargo in an attempt to obtain more information.

On February 7, 2010, Wells Fargo notified Gillespie that her mortgage was in default, with $2,048.67 in past due payments, and that it intended to accelerate the Note if Gillespie failed to cure the default by March 9, 2010. Reeves wrote to Wells Fargo on March 8, 2010, alleging that the mortgage was "fraudulent due to predatory lending practices." MERS then executed a document entitled "Assignment of Note and Deed of Trust," naming Wells Fargo as the assignee and providing that it would be effective on March 31, 2010. The notarized assignment indicated that the "Holder of the Note and Deed of Trust transferred and assigned each to Assignee, and warranted that the lien was valid against the property in the priority indicated." The notarized assignment was signed on behalf of MERS on June 9, 2010 by Stephen C. Porter, identified as an "Assistant Secretary."

On April 30, 2010, Wells Fargo, through their counsel Barrett Daffin Frappier Turner & Engel, LLP ("BDFTE"), notified Gillespie that the Note had been accelerated and the property would be posted for foreclosure sale on July 6, 2010. On May 10, 2010, Wells Fargo's counsel sent Gillespie a copy of the

Note and Deed of Trust with the stamped endorsements.[1]  In June 2010, Gillespie and Reeves filed to suit to halt the foreclosure.  On July 2, 2010, the district court denied their request for a temporary restraining order and preliminary injunction; this court affirmed that decision on June 27, 2011. *Reeves v. Wells Fargo Home Mortg.*, 431 F. App'x 304 (5th Cir. 2011) (unpublished).  Reeves filed an amended complaint in July 2011.  On May 11, 2012, the district court granted Wells Fargo and MERS's ("Defendants") motion for summary judgment, dismissing Reeves's claims for declaratory relief, wrongful acceleration, wrongful foreclosure, fraud, and intentional infliction of emotional distress.[2]

On March 5, 2012, MERS executed a document entitled "Corporate Assignment of Deed of Trust," which assigned to Wells Fargo MERS's "beneficial interest under the Deed of Trust."  The document was signed by Deborah Humphrey, identified as an Assistant Secretary.  Reeves filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), based in part on: the 2012 assignment; an online list of MERS's corporate officers which did not include Stephen Porter, as well as a website listing Porter as a partner of BDFTE; and a copy of the Note allegedly sent to Gillespie by Wells Fargo in 2010 which did not contain the stamped endorsements.  The district court denied

---

[1] An attorney named Terrance Swanson wrote to Wells Fargo on June 29, 2010, regarding Gillespie's visit to his office.  Swanson stated that Gillespie and Reeves "have been reading a book about mortgage scams" and "the book itself . . . are scam-meisters themselves." Swanson requested that Wells Fargo "give [Gillespie and Reeves] a step-by-step procedure" to "bring [the loan] current," because Gillespie's "property in Texas is worth more than she owes so it does not seem needful for her to play games or look for some bureaucratic misstep." In reply, Wells Fargo noted that Gillespie had not authorized it to release loan information to Swanson and gave the number of its loss mitigation department.

[2] The district court also granted additional defendant BDFTE's motion to dismiss. Reeves did not allege claims against BDFTE in her first amended complaint, and on appeal she states that no claims against the law firm "had been asserted."  She has thus waived any claims against BDFTE.  *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

No. 12-50815

Reeves's Rule 59 motion on July 30, 2012. The district court found that the websites relating to Porter and the Note sent to Gillespie in 2010 did not qualify as "newly discovered" evidence. The district court treated the 2012 assignment as newly discovered evidence, but found that it did "not call into question the dismissal of Reeves's claim for wrongful acceleration" because it "at best, allows one to speculate something suspicious happened with the Deed [of Trust] . . . [Reeves's] evidence about the Deed does not buttress her wrongful acceleration claim focused on the Note, and Reeves has no other evidence to suggest that anything suspicious occurred with the Note."

## STANDARD OF REVIEW

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The standard of review of a motion for reconsideration "is dependent on whether the district court considered the materials attached to . . . the motion, which were not previously provided to the court." *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004). If materials attached to a motion for reconsideration are "considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is *de novo*." *Id.* If the district court refuses to consider such materials, we review for abuse of discretion. *Id.*

## DISCUSSION

### I.     Standing

Defendants argue that Reeves does not have standing to sue because she "is not a party to the loan in dispute" and thus there is "no real controversy

5

between her and" Defendants.[3] Defendants cite *Goswami v. Metro Savings & Loan Association* for the proposition that "[a]s a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust." 751 S.W.2d 487, 489 (Tex. 1988).[4] While the Texas Supreme Court in *Goswami* acknowledged that rule, it also noted an exception: "[W]hen the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale." *Id.* Reeves acquired Gillespie's interest in the property via a recorded quit-claim deed, and she made payments on the Note from 2007 to 2009. Reeves's interest in the property is sufficient to challenge the validity of Defendants' authority to foreclose. *See Long v. NCNB–Texas Nat'l Bank*, 882 S.W.2d 861, 867 (Tex. App.–Corpus Christi 1994, no writ) (a plaintiff "need only have established a property interest in the deed of trust realty to impute a flaw" in the sale).[5]

## II.    Summary Judgment

Reeves's only claim on appeal, wrongful acceleration, is premised on her contention that Wells Fargo did not own the Note and the Deed of Trust on her

---

[3] Contrary to Reeves's contention, Defendants did make this argument before the district court.

[4] Defendants also cite *Martinez v. JPMorgan Chase Bank, N.A.*, but that case addressed only whether a party not in privity with the mortgagor is entitled to notice of a foreclosure, not whether such a party can challenge the mortgagee's authority to foreclose. No. SA-9-CV-675-XR, 2010 WL 1780351, at *2 (W.D. Tex. May 3, 2010).

[5] Defendants also argue that even if Reeves has standing to challenge the Note and Deed of Trust, she does not have standing to challenge the assignment because she was not a party to it. We have recently held, however, that under Texas law a homeowner has standing to challenge the assignment of a mortgage as void. *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 722 F.3d 700, 705 (5th Cir. 2013) (allowing homeowners' claim to proceed where they were "not attempting to enforce the terms of the instruments of assignment" but rather "urg[ing] that the assignments [were] void ab initio.").

residence when it began the foreclosure process, and the acceleration was therefore invalid.[6] A "party seeking to foreclose must have the right to enforce the debt it seeks to satisfy." *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 722 F.3d 700, 706 (5th Cir. 2013).

Reeves argues that there is no "documentary proof of transfer of" the note from PlainsCapital to Wells Fargo before Wells Fargo began foreclosure proceedings in 2010. Specifically, she objects to the district court's consideration of Dolan's affidavit, which states that the Note was endorsed to Wells Fargo in 2004, because Dolan lacked personal knowledge of that transaction. Federal Rule of Civil Procedure 56(c)(4) provides that, on summary judgment, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."

Reeves did not object to the admission of Dolan's affidavit before the district court. In fact, Reeves stated in her Rule 59 motion that "Mr. Dolan's affidavit introducing documents may be admissible." The admissibility of evidence at summary judgment "is subject to the same standards and rules that govern the admissibility of evidence at trial." *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 650 n.3 (5th Cir. 1992). "An affidavit that does not measure up to the standards of" Rule 56 "is subject to a timely motion to strike. In the absence of this motion or other objection, formal defects in the affidavit ordinarily are waived." *Auto Drive-Away Co. of Hialeah v. Interstate Commerce Comm'n*, 360 F.2d 446, 448–49 (5th Cir. 1966); *see also Munoz v. Int'l Alliance of Theatrical Stage Employees & Moving Picture Mach. Operators*, 563

---

[6] Because Reeves has not briefed her claims for declaratory relief, wrongful foreclosure, fraud, and intentional infliction of emotional distress, she has waived those claims. *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

F.2d 205, 214 (5th Cir. 1977) ("Inadmissible material that is considered by a district court without challenge may support a summary judgment. Here there was no timely objection and it is deemed waived.").

Regardless of whether Reeves waived her objection to Dolan's affidavit, the district court did not err in considering it. In *Resolution Trust Corp. v. Camp*, we considered a grant of summary judgment based in part on affidavits from employees of the defendants who "had personal knowledge that RTC took over the assets of the failed institutions, [but] they had no precise personal knowledge of this particular note." 965 F.2d 25, 29–30 (5th Cir. 1992). We concluded that to exclude the affidavits would establish "a standard so strict that summary judgment would be all but impossible." *Id.* at 29; *see also Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 (5th Cir. 2002), overruled on other grounds by *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (finding no abuse of discretion where the district court admitted affidavits wherein the affiant stated that he was the director of claims for the defendant, that he "had 'personal knowledge of the facts stated' therein, and that he had access to and had reviewed [the defendant's] records as they pertain to information contained in the affidavits.").

Reeves does not contest that she and Gillespie began payments to Wells Fargo on the Note in August 2004, directly after Wells Fargo alleges it took over the Note, and continued to make payments to Wells Fargo until 2009. In addition, Wells Fargo provided a copy of the Note with stamped endorsements that it sent to Reeves in May 2010, and Reeves did not challenge this evidence at summary judgment. In the face of this evidence, Reeves failed to show a genuine issue of material fact as to whether Wells Fargo owned the Note before it began foreclosure proceedings. Ownership of the Note was sufficient to allow Wells Fargo to foreclose. *See Gilbreath v. White*, 903 S.W.2d 851, 854 (Tex. App. 1995) ("the collateral follows the promissory note obligation"); *Lawson v. Gibbs*,

591 S.W.2d 292, 294 (Tex. App.–Houston [14th Dist.] 1979, writ ref'd n.r.e.); Tex. Bus. & Com. Code § 9.203(g); *id.* cmt. 9 ("Subsection (g) codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien."); *see also Kiggundu v. Mortgage Elec. Registration Sys. Inc.*, 469 F. App'x 330, 331–32 (5th Cir.) (unpublished), cert. denied, 133 S. Ct. 210 (2012) (noting that "under Texas law, the mortgage follows the note" and it is "sufficient for the [lender] to establish that it was in possession of the note; it was not required to show that the deed of trust had been assigned to it.").

### III.   Motion for Reconsideration

A Rule 59(e) motion "calls into question the correctness of a judgment," and "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet*, 367 F.3d at 478–79.   Reeves attached three pieces of evidence to her motion for reconsideration: websites listing Porter as a partner at a law firm rather than a corporate officer of MERS; a copy of the Note which she alleges Wells Fargo sent to her and Gillespie in 2010 without the stamped endorsements; and the 2012 assignment.

Reeves did not allege fraud in connection with Porter's signature on the 2010 assignment in her response to Defendants' motion for summary judgment, but did discuss the issue—without attaching the relevant websites—in her second "Amended Complaint" filed on the same day as the response, March 9, 2012. The district court did not consider the issue in its order granting summary judgment.  An "unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Templet*, 367 F.3d at 479.  But even assuming Porter was not an officer of MERS, his "lack of authority . . . does not furnish [Reeves] with a basis to challenge" the 2010 assignment.  *See Reinagel*, 722 F.3d at 707.  This is

so because under Texas law, "a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal"—here, MERS. *Id.* at 706 (citing *Nobles v. Marcus*, 533 S.W.2d 923 (Tex. 1976)). And an obligor such as Reeves or Gillespie "may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only." *Id.* at 706–07. Instead, "under Texas law, facially valid assignments cannot be challenged for want of authority except by the defrauded assignor." *Id.* at 709.

The district court did not abuse its discretion in not treating as newly discovered the copy of the unendorsed Note, as Reeves alleges that she received it in January 2010, before litigation began. *See Templet*, 367 F.3d at 479 (finding no abuse of discretion where "the underlying facts were well within the [plaintiffs'] knowledge prior to the district court's entry of judgment.").

By contrast, the district court properly treated the 2012 assignment of the Deed of Trust from MERS to Wells Fargo as newly discovered, but concluded it did not affect the 2004 endorsement of the Note from PlainsCapital to Wells Fargo. The 2012 assignment conveyed MERS's "beneficial interest under the Deed of Trust" to Wells Fargo. It did not address the Note. MERS's 2012 assignment of the Deed of Trust may arguably be superfluous if the 2010 assignment of both the Note and Deed of Trust was valid. Nonetheless, we have not previously treated two successive and potentially overlapping assignments as necessarily suspicious. *See Reinagel*,722 F.3d at 706 (noting that where a first assignment was "sufficient to give [the defendant] authority to foreclose . . . the validity of the second assignment is irrelevant.").

Further, Reeves has failed to "point[] to evidence in the record [showing] . . . that [she] had a legitimate fear that [Wells Fargo] was not the owner and holder of the note in question and that some other entity," such as MERS or

No. 12-50815

PlainsCapital, "might later approach [her] demanding payment." *Resolution Trust Corp.*, 965 F.2d at 30. In other words, she did not"point[] to anything in the record to indicate . . . any legitimate fear that any entity other than [the defendant] is owner and holder of the note." *Id.*; *see also Reinagel*, 722 F.3d at 711 (Graves, J., concurring) (where plaintiffs "admit they made their payments to [Defendants] . . . there is no indication that [plaintiffs] were confused as to which lender to pay, or that a significant possibility exists of [the original lender] attempting to collect on the note."). The district court did not err in granting summary judgment after considering the 2012 assignment. *See Templet*, 367 F.3d at 477.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.