# CASES

## ARGUED AND DETERMINED

#### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### WOODSIDE et al. v. CICERONI. [1]

#### (Circuit Court of Appeals, Ninth Circuit. February 13, 1899.)

#### No. 450.

1. FEDERAL COURTS—JURISDICTION—CITIZENSHIP—FRAUD.

A citizen of California, not entitled to sue adverse claimants of mining rights in his land in a federal court, conveyed the property to an alien. The grantee was a laborer, without means, and he agreed to pay only $600 as the price, though the land was worth $1,800; and he paid only $10 down, giving a mortgage for the balance. Shortly afterwards he sued in a federal court to quiet title. *Held*, that the facts did not show that the transfer was simulated for the purpose of conferring jurisdiction on the federal court.

2. SAME—AMOUNT IN CONTROVERSY—SUITS TO QUIET TITLE.

In a suit to quiet title, it is not the value of defendant's claim that constitutes the amount in controversy; it is the value of the whole of the real estate to which the claim extends.

3. MINING RIGHTS—CONVEYANCES—CONSTRUCTION—PROPERTY CONVEYED.

In the first part of a deed there were a bargain, sale, and conveyance of the right to enter upon land for mining purposes only, and to prospect and mine the same. Then followed a provision that the prospecting and mining should be done with as little damage as possible. It was then provided that, "for the purposes aforesaid," a right of way was granted across the land, which was then described; and following the description, without break or punctuation, were the words, "together with the mines of gold therein contained." *Held*, that the last-quoted clause was a part of the description, and not a grant of the mines.

4. SAME—CONDITIONS SUBSEQUENT.

A deed conveyed the right to enter on land for mining purposes only, and to prospect and mine the same, "if [the grantee] should discover any gold in quartz suitable for mining." *Held*, that the quoted clause was not a condition subsequent.

5. SAME—REVOCABLE LICENSES.

Nor was the deed a grant of a mere license, revocable at the will of the grantor.

6. SAME—INCORPOREAL HEREDITAMENTS.

On the contrary, an incorporeal hereditament was conveyed; the deed containing apt words of conveyance of such a right, and reciting a sufficient consideration, which had been paid, and the grant being to the grantee and his heirs and assigns forever.

[1] Rehearing denied March 2, 1899.

93 F.—1

**7. SAME—ABANDONMENT—EXCLUSIVE RIGHTS.**

A grant of the right to enter on land for mining purposes only, and to prospect and mine the same, not being exclusive, the grantor and his subsequent grantees, also, had the right to prospect and mine on the same land. Hence no presumption could arise of abandonment of the rights first granted, from the fact that similar rights were exercised by the grantor and his subsequent grantees.

**8. SAME—ADVERSE USER.**

Nor would such use of the premises by the grantor and his subsequent grantees be adverse to the first grantee, where he was not excluded from the exercise of his rights.

**9. SAME—ABANDONMENT.**

The mere failure of the first grantee to exercise his rights would not extinguish them.

Appeal from the Circuit Court of the United States for the Northern District of California.

J. P. Langhorne, for appellants.

W. E. F. Deal and Edmund Tauszky, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. On September 27, 1884, Joseph Hocking executed to John W. Anderson a conveyance, of which the following is a copy:

"This indenture, made the 27th day of September, A. D. 1884, between Joseph Hocking, party of the first part, and John W. Anderson, the party of the second part, witnesseth that the party of the first part, for the consideration of one dollar, and other valuable considerations, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, and convey to the party of the second part, and to his heirs and assigns, forever, the right to enter on the following described tract or parcel of land for mining purposes only, and to prospect and mine the same, if he should discover any gold in quartz suitable for mining. Said prospecting and mining of said land to be done with as little damage to the surface of the land for agricultural purposes as a proper mining thereof will permit, and for the same purposes the party of the first part hereby grants the right of way across the tract of land hereinafter described. Said tract of land being situated in Tuolumne county, California, and being the S. ½ of S. E. ¼, and S. E. ¼ of S. W. ¼, and N. W. ¼ of S. E. ¼, section No. 30, in township No. 1 north, range No. 15 east, M. D. M., together with the mines of gold therein contained. In witness whereof, the party of the first part has hereunto set his hand and seal this —— day and year," etc.

On the same day, Joseph Hocking sold and conveyed to John Rocca the land which is described in the foregoing deed, reserving therefrom the rights which had been granted by the deed to Anderson, in the following words:

"Less the right to enter on said land, and to prospect and mine for gold, if any be hereafter discovered thereon, this day granted to J. W. Anderson."

On April 23, 1896, Antonio Ciceroni, who had succeeded to the interest of John Rocca, commenced the present suit against the personal representatives and widow of John W. Anderson to quiet the title of the complainant to the said property. The complaint alleged that the complainant was the owner of, and in the possession of, said real estate, and that the defendants, without right or title,

claimed an estate or interest therein adverse to him. The defendants, answering the bill, set up their rights under the conveyance from Hocking to Anderson. Upon the testimony taken upon the issues, the court decreed that the complainant was the owner of the premises, and that the claims of the defendants were invalid and without right.

Upon the appeal to this court, the jurisdiction is challenged upon the ground that the transfer to Ciceroni was collusive for the purpose of conferring jurisdiction upon this court. It was shown that Ciceroni was an alien, and as such entitled to bring a suit in the United States court, whereas his grantor was a citizen of California, and had no such right. It was shown, moreover, that Ciceroni was a laborer, without means; that the price which he agreed to pay for the land was $600, of which he paid but $10 in cash, giving his note and mortgage for $590; and that the true value of the land was in the neighborhood of $1,800. We think that the evidence falls short of showing that the transfer was not an absolute conveyance. There is no evidence whatever that any right was reserved to the former owner, or that there was an understanding or agreement that the property was to be reconveyed to him. Much reliance is placed on the fact that the evidence shows that the complainant did not know that the suit had been commenced until two weeks after the bill was filed; but this is undoubtedly a mistake in the testimony. When he testified that he did not know, when he bought, that suit had been brought, he evidently meant that he did not know of the adverse claims against the title; for it appears that the bill was signed and sworn to by the complainant in person. The fact that the price which he agreed to pay for the land was less than its value may be accounted for by the fact that the title was beclouded by the defendants' claim. The title was uncertain, and was about to be involved in litigation.

It is contended, also, by the appellants, that it is not shown that the value of the subject in controversy is sufficient to confer jurisdiction. The bill alleged that the value of the land exceeded $2,000. The testimony of two witnesses was taken to show this. One testified that it was worth $2,500. The other testified, in substance, that, owing to the possibility that a certain ore vein on neighboring premises extended through the premises in controversy, the latter had a speculative value of $2,500. No evidence was taken to contradict these witnesses. We think this evidence is sufficient to show that the value is as alleged in the bill. But it is urged that the subject in controversy is not the whole of the real estate, but only the interest therein which was conveyed to Anderson, and that no evidence was taken, and the court is without information concerning the value of that interest. If the interest so conveyed to Anderson were confined to any defined portion of the real estate, there can be no doubt that the matter in controversy would be limited to that portion, and the value thereof would be the amount involved. But the rights granted under the deed to Anderson cover the whole of the land. No portion of it is exempt from the privilege of right of way, and the right to prospect and mine, which he thereby acquired. Such being the case, the claim of the defendants affects the right of

the complainant to the enjoyment of the whole of his estate. In a suit to quiet title, or to remove a cloud therefrom, it is not the value of the defendant's claim which is the amount in controversy, but it is the whole of the real estate to which the claim extends. It would be impossible, for instance, to estimate the value of an interest claimed under a forged or fraudulent instrument. It is the property to which such an instrument relates that is the subject of the controversy. In Smith v. Adams, 130 U. S. 175, 9 Sup. Ct. 569, the supreme court said:

"Thus, a suit to quiet the title to parcels of real property, or to remove a cloud therefrom, by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, only by the value of the property affected. Alexander v. Pendleton, 8 Cranch, 462; Piersoll v. Elliott, 6 Pet. 95; Stark v. Starrs, 6 Wall. 402; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495."

The decision of the case upon its merits involves the construction of the deed from Hocking to Anderson. What is the nature of the rights which were conveyed by that instrument? The appellants contend that the clause, "together with the mines of gold therein contained," is to be read as a portion of the subject granted, and that it imports a grant of all the mines of gold in the premises described in the deed. Upon consideration of the whole instrument, and not unmindful of the rule that the words of a grant are to be construed most strongly against him whose words they are, we think that the clause referred to is intended to be a portion of the description of the premises over which a right of way is granted, and not a grant of the mines of gold therein. There are in the first part of the deed a bargain, sale, and conveyance of the right to enter upon the lands for mining purposes only, and to prospect and mine the same. Then follows the provision that the prospecting and mining shall be done with as little damage as may be. Then it is provided that, "for the purposes aforesaid," a right of way is granted "across the tract of land hereinafter described." The words, "together with the mines of gold," etc., are a portion of the description of the land across which the right of way is given. They follow the description, without break or punctuation, and belong to the clause which begins with, "Said tract of land being situate," etc.

It is contended by the appellee that the clause, "if he should discover any gold suitable for mining," imposes a condition upon the rights of the grantee, and renders the deed a conveyance upon condition subsequent, and that, inasmuch as no such discovery was made within a reasonable time, he acquired only a personal license. We do not think, however, that those words create, or were intended to create, a condition of the grant. As they are used, they are superfluous words, and mean no more than that the right granted may be exercised by the grantee at his will. He was authorized in any event, and at all times, to prospect for mines on the property; and he was authorized to mine quartz, if he should find any suitable for mining. Of its suitableness for mining purposes he was to be the judge. His right to continue to prospect was not to depend upon his success in finding ore suitable for mining. In that respect it resembled a profit à prendre, of hunting or fishing, which is a cor-

poreal hereditament, continuous irrespective of the success of the hunter or the fisher. He had the right to search, and incidentally the right to mine and carry away the results of his search. We find nothing to indicate an intention that, if he discovered ore suitable for mining, his right was to be continuous, otherwise not. His grantor was to derive no benefit from such a discovery. He was to receive no rent or further consideration therefor. It is but reasonable to presume that, if it had been the intention to place a limit upon the duration of the rights which are in terms granted in the deed, and are therein described as perpetual, it would have been clearly expressed. In brief, the deed conveys to the grantee, without condition, the right to enter, to prospect, and to mine upon the described premises.

Is it a grant of a license, revocable at the will of the grantor, or does it convey an incorporeal hereditament,—a perpetual right to the grantee, and his heirs and assigns, to exercise the privileges which are described? We are of the opinion that it is the latter. It contains apt words of conveyance of such a right. It recites a sufficient consideration, which has already been paid. The grant is to the grantee, and to his heirs and assigns, forever. These features of the instrument, while they are not conclusive of its meaning, are properly to be considered in determining its character. The fact that the right which is conveyed is not made appurtenant to other land of the grantee, or that there is no dominant estate to which it is attached, is not decisive of its nature or duration. Such a right, when it is granted in gross, as in this instance, may nevertheless partake of the nature of an interest in land, and be treated as an incorporeal hereditament. It is not properly an easement, but it is a profit à prendre, such as the right to enter upon the land of another for profit, and to take therefrom something growing thereon, or attached thereto, or subsisting therein. In Washb. Easem. 13, the distinction is thus expressed:

"The distinction seems to be this: If the easement consists in a right of profit à prendre, such as taking soil, gravel, and minerals, and the like, from another's land, it is so far of the character of an estate or interest in the land itself that, if granted to one person in gross, it is to be treated as an estate, and may therefore be for life or inheritance. But if it is an easement proper, such as the right of way, and the like, and it is granted in gross, it is a mere personal interest, and not inheritable."

In the leading case of Doe v. Wood, 2 Barn. & Ald. 724, the court said:

"This indenture, in its granting part, does not purport to demise the land or the metals, or the minerals therein comprised. The usual technical words of demising such matters are well known, and usually adopted in a formal deed, when the intent is to demise the land or metals or minerals. But the purport of the granting part of this indenture is to grant, for the term therein mentioned [here, in fee], a liberty, license, power, and authority to dig, work, mine, and search for metals, minerals, in and throughout the lands described, and to dispose of the ore, etc., that should be found within the term, to the use of the grantee, etc. Instead, therefore, of parting with or granting all the ore that was then existing on the land, its words import a grant of such parts thereof as should, upon the license or power given to search and get, be found within the described limits, which is nothing more than a grant of a license to

search and get (irrevocable, indeed, on account of its carrying interest), with a grant of such of the ore only as should be found and got; the grantor parting with no estate or interest in the rest."

In Grubb v. Bayard, 2 Wall. Jr. 81, Fed. Cas. No. 5,849, the grant was of the privilege to the grantee, his heirs and assigns, to dig, take, and carry away all iron ore to be found within a certain tract, paying so much a ton. It was held that this was a grant of the right or privilege to dig, take, and carry away ore to be found, and that the assignee of such grantee could bring an action to protect the right; that the privilege was an incorporeal hereditament, or a license irrevocable, which may be demised for a term of years or assigned in fee. Grier, Circuit Justice, said:

"A right or privilege to dig and carry away ore from the land of another is an incorporeal hereditament,—a right to be acquired on the land of another. It is a license irrevocable when granted on sufficient consideration. It may be demised for years, or granted in fee. It is assignable."

In Ryckman v. Gillis, 57 N. Y. 68, the grant was to one, and to his heirs and assigns, of the right at all times to enter upon the premises, "and to dig and take therefrom the clay and sand that may be found thereon fit for brickmaking." Said the court, "The defendant was the owner of an incorporeal right." In Huff v. McCauley, 53 Pa. St. 206, it was held that a contract that one may take coal for his works from the land of another is a right of profit à prendre, is incorporeal, and incapable of creation, except by grant or prescription. Similar decisions are found in Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. St. 241; Caldwell v. Fulton, 31 Pa. St. 475; Desloge v. Pearce, 38 Mo. 588; Riddle v. Brown, 20 Ala. 412; Reynolds v. Cook, 83 Va. 817, 3 S. E. 710; Hill v. Lord, 48 Me. 83; Grubb v. Guilford, 4 Watts, 223; Grubb v. Grubb, 74 Pa. St. 25.

The cases of Cahoon v. Bayaud, 123 N. Y. 298, 25 N. E. 376, and Algonquin Coal Co. v. Northern Coal & Iron Co., 162 Pa. St. 114, 29 Atl. 402, are cited by the appellee to support the contention that the deed to Anderson conveyed only a license revocable at the will of the grantor or his assigns. In Cahoon v. Bayaud there was a written contract that the plaintiff should have the right to enter upon the premises, and to prospect and examine for mines and minerals, and to carry away and test the same. If, after making such tests, he should be of the opinion that they were worth working, he then should have the right to enter and mine the same, upon his paying to the owner a certain proportion of the net profits. It was further provided that the agreement should bind the heirs and assigns of the prospective parties. It was held that the right was a license to the plaintiff. But the decision was controlled by the fact, as stated in the opinion, that the agreement "does not contain any words sufficient to constitute a deed of an estate in lands, or even importing the granting of such." The case of Algonquin Coal Co. v. Northern Coal & Iron Co. is not in conflict with the conclusion which we have reached, nor with the authorities which have been cited to support the same. In that case a grantor conveyed land in fee simple, reserving to himself, "his heirs and assigns, a free toleration to get coal for their own use." The court held that the reservation did not extend

to all the coal beneath the surface, but that it was merely an incorporeal right, concurrent with the mining right of the grantee, to get and carry away such coal as the grantor and his assigns might personally need for fuel.

It is contended by the appellee that, in any view of the purport of Anderson's deed, the rights which were conveyed to him were forfeited by his nonuser thereof, and were extinguished by the open and adverse possession of the premises by Rocca in prospecting and mining upon the premises during nearly the whole of the period between the date of the deed and the commencement of the suit. But there is no evidence of adverse possession on the part of Rocca. It is shown that he occasionally prospected upon the premises, and that others, by his permission, did likewise, and that he knew nothing of Anderson's deed, or of his prospecting upon the premises, until shortly after the commencement of the suit. There was testimony on the part of the appellants that they and Anderson had also, at intervals, prospected upon the same premises. The right to prospect and mine which was granted to Anderson was not exclusive. It was not inconsistent with the reservation of a concurrent right to the grantor. Undoubtedly, the latter and his subsequent grantees had the right, also, to prospect and to mine upon the same land. Such being the case, there could arise no presumption of the abandonment of the rights granted to Anderson from the exercise of similar rights in the same premises by the owner of the dominant estate; nor would such use be adverse, in the absence of proof that Anderson was excluded from the exercise of the rights which were granted to him. His mere failure to exercise his rights would not operate to extinguish them. It is only where an easement has been acquired by use that its nonuse, without other evidence of abandonment, will extinguish it. An easement created by grant is not lost by nonuser, in the absence of evidence of abandonment or of adverse occupancy. Pope v. O'Hara, 48 N. Y. 446; White v. Crawford, 10 Mass. 183; Barnes v. Lloyd, 112 Mass. 224; Kuecken v. Voltz, 110 Ill. 264; Day v. Walden, 46 Mich. 575, 10 N. W. 26; Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896. The decree will be reversed, and the cause remanded for further proceedings not inconsistent with the foregoing opinion.