# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2013

No. 12-20668

Lyle W. Cayce
Clerk

JANOS FARKAS,

Plaintiff-Appellant

v.

GMAC MORTGAGE, L.L.C.; DEUTSCHE BANK TRUST COMPANY
AMERICAS,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DeMOSS, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Janos Farkas appeals the district court's ruling granting the defendants' motion for summary judgment on claims arising out of the threatened foreclosure on two residential investment properties he owned. Farkas argues that the district court had no jurisdiction because of an insufficient amount in controversy under Section 1332. He also argues that it was not shown that these defendants had the right to foreclose. We AFFIRM.

Janos Farkas purchased two residential investment properties in 2006. One of the properties is located on Claretfield Court in Humble, Texas, and the other on Oakview Creek Lane in Houston. Cornerstone Mortgage Company was the lender and the mortgage servicer at the time of the origination of the loans.

No. 12-20668

The loans for each property were evidenced by a promissory note signed by Farkas and secured by a deed of trust, also signed by Farkas. Each deed of trust named Mortgage Electronic Registration Systems, Inc. ("MERS"), its successors and assigns, as Cornerstone's beneficiary with the right to enforce Cornerstone's legal interests. The purchase price was $87,288 for the Claretfield property and $88,061 for the Oakview property.

Cornerstone sold both the Claretfield and Oakview promissory notes in 2006 to Residential Funding Corporation ("RFC"), an affiliate of GMAC Mortgage. Later in 2006, the promissory notes for both loans were securitized and pooled with others in a trust, with Deutsche Bank National Trust Company Americas named as the trustee. The deeds of trust were registered with MERS and were not conveyed with the promissory notes. MERS subsequently assigned the Claretfield Deed of Trust on May 31, 2011 and the Oakview Deed of Trust on June 17, 2010 to Deutsche Bank. Each assignment was recorded in the real property records of Harris County, Texas.

The mortgage servicing rights were transferred separately from the deeds of trust and the promissory notes. The servicing right for the Claretfield promissory note was transferred from Cornerstone to Homecomings Financial, LLC on July 1, 2006, who transferred it to GMAC on July 1, 2009. The servicing right for the Oakview promissory note was transferred from Cornerstone to Homecomings on August 1, 2006, then to GMAC on July 1, 2009. GMAC continues to service both promissory notes.

Farkas made monthly payments on each note until December 2010. During this time, Farkas acknowledged receiving notice of the change in mortgage servicer for both the transfer of servicing to Homecomings and the transfer to GMAC.

In August 2010, Farkas contacted GMAC as to each loan in separate letters. He asked for confirmation under the Truth in Lending Act that GMAC

2

was the "Rightful Holder in Due Course." He also stated that if GMAC is "just a servicer, I demand that you identify both the Holder in Due Course . . . and written authorization that entitles you to service this instrument." GMAC's responses, dated August 26, 2010 for the Claretfield note and August 27, 2010 for the Oakview note, did not provide the requested documentation proving the right to service the loans. It provided the account's payment history and the basic originating documents for both loans. As to the Claretfield loan, GMAC stated that the loan was registered with MERS. The response additionally said the loan had been "transferred to GMAC Mortgage LLC for servicing on June 27, 2006," and the current owner of the loan was Deutsche Bank. On the Oakview loan, GMAC said that the "holder in due course" was Deutsche Bank.

Farkas sent GMAC notice of an "Intent to Litigate" as to both mortgages in September 2010 as a result of his dissatisfaction with GMAC's response. He ceased making payments on both loans in December 2010.

GMAC sent Farkas notices of default and intent to accelerate payments for the Claretfield note on May 16, 2011 and for the Oakview note on May 13, 2011. At the time Farkas suspended payment, the unpaid principal and interest on the notes were $85,773.20 on the Claretfield property and $88,092.20 on the Oakview property. Neither property, though, has been subject to a foreclosure sale due to a restraining order granted by the state court prior to removal to federal district court.

Farkas brought suit in state court against GMAC and Deutsche Bank. The defendants removed the case to the United States District Court for the Southern District of Texas. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). We will refer to the magistrate judge's rulings as being those of the district court. In a detailed opinion, the district

No. 12-20668

court granted the defendants' motion for summary judgment, denied Farkas' motion for partial summary judgment, and dismissed defendants' motion for judgment on the pleadings as moot.  Farkas appeals.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*.  *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010).  We view all evidence in the light most favorable to the non-moving party.  *Id.*  Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

### I.     Subject-Matter Jurisdiction

Farkas argues that his claim did not meet the minimum amount in controversy for removal to federal court.  Our review of jurisdictional issues is *de novo*.  *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 935 (5th Cir. 2012).  Federal courts have original jurisdiction over civil actions where the parties are diverse and the amount in controversy exceeds $75,000.  28 U.S.C. 1332(a).  In his initial claim, Farkas sought damages "not to exceed $60,000," a temporary restraining order, declaratory judgment, and a permanent injunction to stop the foreclosure actions on both properties.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977).  The purpose of the injunctive and declaratory relief, to stop the foreclosure sale of the properties by GMAC and Deutsche Bank, establishes the properties as the object of the present litigation.  As this court has explained, "the amount in controversy, in an action for declaratory or injunctive relief, is the value of the

right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983). Farkas' claimed injury was the potential loss of use and ownership of the properties. In actions enjoining a lender from transferring property and preserving an individual's ownership interest, it is the property itself that is the object of the litigation; the value of that property represents the amount in controversy. *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973). Under any reasonable basis for valuing the properties, whether purchase price, market value, or outstanding principal and interest, the amount in controversy threshold is exceeded and federal subject-matter jurisdiction exists.

## II.     *Validity of Defendants' Foreclosure*

Farkas challenges the validity of the foreclosure action initiated by the defendants. Farkas contends that Deutsche Bank is not a proper grantee, beneficiary, owner, or holder of the deeds of trust; that the transfer of the notes to Deutsche Bank was improper under the Pooling & Services Agreement ("PSA"); that GMAC is not a proper servicer; and that no evidence supports GMAC's continued role as servicer after assignment to Deutsche Bank. We will address each argument.

A. Whether Deutsche Bank was a Mortgagee

"[W]here federal jurisdiction is based on diversity of citizenship . . . a federal court is in effect only another court of the state in which it sits and applies the same law that would be applied if the action had been brought in state courts." *Aerosonic Corp. v. Trodyne Corp.*, 402 F.2d 223, 229 (5th Cir. 1968). Under this principle, and applying Texas law, we conclude that the district court was correct in its determination that Deutsche Bank was a mortgagee and could proceed with the foreclosure action. Under Texas law, a

No. 12-20668

non-judicial foreclosure may be initiated by the current mortgagee including: "the grantee, beneficiary, owner, or holder of a security instrument;" a "book entry system;" or "the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4). As the record demonstrates, the deeds of trust named MERS the beneficiary of Cornerstone and MERS later assigned the deeds of trust to Deutsche Bank. As this court has concluded, "[b]ecause MERS is a book-entry system, it qualifies as a mortgagee." *Martins v. BAC Home Loan Servicing, L.P.,* 722 F.3d 249, 255 (5th Cir. 2013). Our holding in *Martins* permits MERS and its assigns to bring foreclosure actions under the Texas Property Code. Deutsche Bank became the mortgagee as defined under Section 51.0001(4) by valid and recorded transfer of the deeds of trust and therefore was an appropriate party to initiate non-judicial foreclosure actions against the Oakview and Claretfield properties.

B. Challenge to the Assignment to Deutsche Bank Under the PSA

Farkas next challenges the assignment of the notes to Deutsche Bank. He asserts that they are void because they were in violation of the PSA governing the RAI Series 2006-QS9 trust. He argues that the improper assignment precludes Deutsche Bank from properly assuming the status of mortgagee and foreclosing on the properties. Farkas concedes, though, that he is not a party to the PSA, the terms of which he seeks to enforce. We have addressed a similar challenge to a foreclosure action based on the violation of the terms of a PSA and found that borrowers lacked standing to challenge the transfer of a note in violation of the terms of the PSA. *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 12-50569, 2013 WL 5832812, at *5 (5th Cir. Oct. 29, 2013). We explained that borrowers, as non-parties to the PSA, "have no right to enforce its terms unless they are its intended third-party beneficiaries." *Id.* Further, the "Texas

6

No. 12-20668

Supreme Court has established 'a presumption . . . that parties contracted for themselves,' which applies 'unless it clearly appears that they intended a third party to benefit from the contract.'" *Id.* (internal citations omitted). As a non-party mortgagor, and without any evidence showing Farkas to be an intended third-party beneficiary, we conclude that Farkas lacks the requisite standing to bring suit to enforce the terms of the PSA that govern the assignment of the mortgagor's note.

C. Challenge to GMAC's Status as Mortgage Servicer

Finally, Farkas argues that the district court erred in concluding that GMAC was the mortgage servicer under Section 51.0001(3) of the Texas Property Code. *See* TEX. PROP. CODE § 51.0001(3). Farkas contends that GMAC was not the mortgage servicer and was therefore incapable of initiating a foreclosure proceeding under Section 51.0025.

A "'[m]ortgage servicer' means the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." TEX. PROP. CODE § 51.0001(3). A later provision in the same statute allows mortgage servicers to initiate and process foreclosures. *See* TEX. PROP. CODE § 51.0025. Farkas argues that GMAC, who initiated the challenged foreclosures, was not a valid mortgage servicer because he had never been properly notified of that fact.

We have already quoted Section 51.0001(3), which provides the mechanism by which a debtor will come to know the identity of its mortgage servicer: it is the entity that the *current* mortgagee identified in notice sent to the mortgagor. The entity so identified has the rights and responsibilities permitted mortgage servicers under the statutory scheme, including the ability to foreclose on behalf of a mortgagee.

No. 12-20668

It is undisputed that Farkas made monthly payments on both the Claretfield and Oakview mortgages to companies identified to him as mortgage servicers beginning with the origination of the mortgages in 2006 and extending until December 2010. The servicing for each mortgage was transferred from Cornerstone to Homecomings in 2006 and to GMAC in 2009. In each case, the preceding *mortgage servicer* and not the new mortgagee notified Farkas of the identity of the succeeding mortgage servicer. When Deutsche Bank became the "current mortgagee" of the Oakview property in 2010, no notice was given Farkas by anyone that GMAC remained the servicer. MERS remained the mortgagee on the Claretfield deed of trust until after Farkas went into default.

In his appellate brief, Farkas complains that he "has never been instructed by the current mortgagee to make payments to GMAC," and the "notices contain no instructions by the current mortgagee to whom the mortgagor needs to make payment to." The district court rejected the complaints by emphasizing the notice that was provided, the unbroken chain of assignment of interests for both loans, and Farkas' acknowledged awareness of having to make payments to GMAC. It found these facts, in concert with the absence of evidence suggesting an alternate mortgage servicer or that GMAC was no longer the mortgage servicer, to render Farkas' argument untenable. We do not disagree, but we conclude that the requirement in Section 51.0001(3) that the *current mortgagee* provide the notice requires us also to consider the defendants' argument that quasi-estoppel under Texas law precludes Farkas from challenging GMAC's status as mortgage servicer. Even though the district court did not address the estoppel argument, we may affirm summary judgment "on any grounds supported by the record." *Lifecare Hosp., Inc. v. Health Plus of Louisiana, Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

8

No. 12-20668

Texas courts apply the term "quasi-estoppel" to legal bars such as ratification, election, acquiescence, waiver, or acceptance of benefits. *See Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.,* 817 S.W.2d 160, 164 (Tex. App. – Houston 1991) (citing 31 C.J.S. *Estoppel* § 107 (1964)). Quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (citations omitted).

At any point after the 2006 origination of the mortgages, Farkas could have raised the issue that only the current mortgagee could provide effective notice of the identity of the mortgage servicer. He did not do so until this litigation. Farkas made payments to GMAC, the entity whose status as mortgage servicer is presently subject to challenge, from July 2009 until December 2010. The duration and regularity of these continued payments to mortgage servicers who had not been identified by current mortgagees constitute acquiescence to the validity of notice of transfer from one mortgage servicer to the next. The equitable relief afforded by quasi-estoppel assures that a party's position on a given issue is more than a matter of mere convenience but is instead a stance to which it is bound.

Quasi-estoppel is supported by different facts as to each property. As to the Claretfield property, the preceding mortgage servicer provided notice to Farkas of a new servicer each time the mortgage servicing for the property was transferred. The mortgagee of the Claretfield loan did not change until after Farkas defaulted on the loan, as MERS transferred its interest to Deutsche

No. 12-20668

Bank in May 2011. The only possible defect in the notice provided to Farkas prior to default was that the wrong entity, the preceding mortgage servicer, twice provided the notice of a new mortgage servicer. Quasi-estoppel precludes Farkas from pressing this claim after he defaulted on the loan because he did not object on this basis after the preceding changes in mortgage servicers.

As to the Oakview loan, though, MERS transferred its interest to Deutsche Bank in July 2010. GMAC remained the mortgage servicer after the transfer. GMAC's August 2010 letter responding to Farkas' inquiry assured him that it was the current servicer. Farkas did not suggest in the course of his exchange with GMAC that communications from a servicer were no longer sufficient, though Farkas did demand that GMAC (not the current mortgagee) provide documentation showing its status as servicer. The claimed statutory violation, though, is not GMAC's failure to document but Deutsche Bank's failure to notify Farkas of the identify of the mortgage servicer.[1]

Quasi-estoppel applies to Farkas's challenge to GMAC's status as mortgage servicer of each loan. AFFIRMED.

---

[1] We find no doubt on this record that Deutsche Bank was the mortgagee and GMAC the servicer, despite possible defects in the manner in which Farkas was notified. That clarity distinguishes this case from a decision by a Texas federal court denying a motion to dismiss under Rule 12(b)(6), when there was doubt on the pleadings as to the identity of the mortgagee and the servicer. *Shelton v. Flagstar Bank, F.S.B.*, No. 4:11-cv-03805, 2012 WL 1231756, *2 (S.D. Tex. Apr. 12, 2012).