**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

ESPERANZA CORRAL; DIANA
BALGAS,

      *Plaintiffs-Appellants*,

v.

SELECT PORTFOLIO SERVICING, INC.;
U.S. BANK,

      *Defendants-Appellees.*

</td><td>

No. 15-16574

D.C. No.
3:15-CV-01542-
EMC

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted May 19, 2017
San Francisco, California

Filed December 27, 2017

Before: Kim McLane Wardlaw and Andrew J. Kleinfeld,
Circuit Judges, and Cathy Ann Bencivengo, District Judge.[*]

Opinion by Judge Bencivengo;
Dissent by Judge Kleinfeld

---

[*] The Honorable Cathy Ann Bencivengo, District Judge for the U.S.
District court for the Southern District of California, sitting by
designation.

## SUMMARY[**]

### Diversity Jurisdiction

The panel reversed the district court's denial of a motion to remand, vacated the district court's order granting Select Portfolio Servicing, Inc.'s motion to dismiss, and directed that the case be remanded to state court, because the district court was without subject matter jurisdiction where the removing party, Select Portfolio, did not satisfy its burden of establishing the amount in controversy exceeded $75,000 for purposes of diversity jurisdiction.

Plaintiffs' complaint sought only a temporary stay of foreclosure pending review of a loan modification application pursuant to the California Homeowners Bill of Rights. The panel held that the value of the property or amount of indebtedness were not the amounts in controversy in such a circumstance. Because Select Portfolio only asserted these amounts in its notice of removal, the panel concluded that it had not established the requisite amount in controversy. The panel noted that parties seeking to establish diversity jurisdiction over such cases may still demonstrate that the amount in controversy requirement was satisfied using other measures, such as the transactional costs to the lender of delaying foreclosure or a fair rental value of the property during the pendency of the injunction; and possibly adding such amounts to any other compensatory damages sought by the plaintiff.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Kleinfeld dissented, and would affirm the district court.  Judge Kleinfeld would hold that the district court correctly followed the rule in *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973), that in a suit to enjoin foreclosure, the amount in controversy is the value of the property sought to be foreclosed.

**COUNSEL**

Anthony George Graham (argued), Graham & Martin LLP, Santa Ana, California, for Plaintiffs-Appellants.

Thomas A. Woods (argued) and Bao M. Vu, Stoel Rives LLP, Sacramento, California, for Defendants-Appellees.

**OPINION**

BENCIVENGO, District Judge:

This case requires us to decide how to measure the amount in controversy for the purpose of determining diversity subject matter jurisdiction when a complaint seeks only a temporary stay of foreclosure pending review of a loan modification application pursuant to the California Homeowners Bill of Rights ("HBOR").  We hold that the value of the property or amount of indebtedness are not the amounts in controversy in such a circumstance.

**BACKGROUND**

On March 15, 2013, Appellants Esperanza Corral and Diana Balgas (together, "Corral") received a notice of default

on their mortgage on the residential property where Ms. Balgas lives (the "Property"). They then applied for a loan modification with the loan servicer, Appellee Select Portfolio Servicing, Inc. ("SPS").[1]  In April 2014, while the loan modification application was pending, Corral received a Notice of Trustee Sale of the Property. Thereafter, Corral filed a lawsuit in the California Superior Court for Alameda County (the "First Action") and successfully moved for a temporary restraining order ("TRO") of the trustee sale. In December 2014, the parties reached a settlement, pursuant to which SPS agreed to wait thirty days following the dismissal of the First Action to receive Corral's submission of a completed application for a loan modification.  The settlement agreement also provided that if SPS did not receive a completed application within thirty days, SPS reserved the right to pursue non-judicial foreclosure of the Property.

On or around February 25, 2015, SPS scheduled a trustee sale for the Property for March 5, 2015. On March 3, 2015, Corral filed this lawsuit in California Superior Court for Alameda County, asserting claims for violation of HBOR and for violation of California's unfair competition law, California Business & Professions Code § 17200 et seq. The Superior Court issued a TRO enjoining the trustee sale, but it

---

[1] U.S. Bank, N.A., is also a party to this litigation.  The original complaint does not list U.S. Bank in the caption, but the complaint begins: "As for her causes of action against [SPS], U.S. Bank, and Does 1-10. . . ."  The amended complaint, filed after the case was removed, lists U.S. Bank in the caption, and the parties' briefs identify it as an Appellee. U.S. Bank's role in the underlying dispute is not clear from the pleadings, but based on documents in the record, it appears to be the trustee for the trust that holds the note on the Property.

later denied Corral's motion for a preliminary injunction of the foreclosure sale.

On April 3, 2015, SPS removed this lawsuit to the United States District Court for the Northern District of California. The notice of removal stated that the district court had diversity jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and more than $75,000 is in controversy. As for diversity, the notice stated that Corral and Balgas are citizens of California and SPS is a Utah corporation with its principal place of business in Utah. As for the amount in controversy, the notice stated that the amount in controversy requirement is satisfied because the Deed of Trust on the Property secured a $680,000.00 promissory note and the unpaid balance and other charges on the promissory note at the time of the notice was $806,512.74.

The district court denied Corral's motion to remand. In its opinion, the district court relied exclusively on cases where the plaintiffs sought an indefinite injunction against foreclosure, to quiet title to the property in question, or to rescind their loans, and concluded that Corral's gains from the temporary injunction "would surely exceed $75,000" in light of the value of the Property and amount of indebtedness.

Corral also filed an amended complaint in the district court that added claims for breach of contract and breach of the implied covenant of good faith and fair dealing arising out of the settlement of the First Action. The amended complaint specified that the amount in controversy does not exceed $75,000. On July 9, 2015, the district court granted SPS's motion to dismiss the amended complaint for failure to state a claim. Corral now timely appeals.

## STANDARD OF REVIEW

Although Corral's brief does not specifically identify the district court's denial of the motion to remand as an issue presented for review, it argues that the motion to remand should have been granted. Our review of a denial of a motion to remand is de novo. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *see also Reeb v. Thomas*, 636 F.3d 1224, 1225 (9th Cir. 2011) ("The existence of subject matter jurisdiction is a question of law reviewed de novo."). Moreover, "[t]he requirement that jurisdiction be established as a threshold matter is inflexible and without exception; for jurisdiction is power to declare the law, and without jurisdiction the court cannot proceed at all in any cause." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–95 (1998)) (internal brackets, ellipses, citations and quotation marks omitted). Thus, it is irrelevant that the Corral did not expressly identify subject matter jurisdiction as an issue on appeal because the court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

## DISCUSSION

"Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). This burden is particularly stringent for removing defendants because "[t]he removal statute is strictly construed, and any doubt about the right of removal requires

resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (noting the "strong presumption" against removal jurisdiction).

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for 'federal-question' jurisdiction, § 1332 for 'diversity of citizenship' jurisdiction." *Arbaugh*, 546 U.S. at 513 (internal brackets omitted). SPS removed this case to federal court on the basis of diversity jurisdiction. "For a federal court to exercise diversity jurisdiction under § 1332(a), the amount in controversy must exceed $75,000, and the parties must be citizens of different states." *Rainero v. Archon Corp.*, 844 F.3d 832, 839 (9th Cir. 2016); *see also* 28 U.S.C. § 1332(a).

Corral did not dispute the existence of diversity of citizenship in the motion to remand before the district court, but the citizenship of each party is not entirely clear from the record. There is no dispute that Corral and Balgas are citizens of California, and that SPS is a Utah corporation with its principal place of business in Utah. However, the notice of removal did not specify the citizenship of U.S. Bank, N.A., which was identified as a party in the original complaint and as an appellee here. Nevertheless, we have previously ruled that U.S. Bank, N.A., "is a citizen of Ohio because its main office is located in that state." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (citing *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006)). Assuming U.S. Bank's main office was located in Ohio when Corral filed this lawsuit, there is complete diversity of the parties.

Assuming diversity exists, the only issue is whether the amount in controversy exceeds $75,000. The original complaint, which was the operative complaint at the time of removal, did not seek a specific dollar amount in damages. Rather, it prayed for "an order enjoining the sale of the Subject property while Plaintiff's loan modification application is under review," compensatory damages, and costs. Elsewhere, the complaint stated that "Defendants may be liable for the greater of treble damages or $50,000 if the material violation was intentional, reckless or resulted in willful misconduct. Plaintiff may also be awarded her reasonable attorney's fees and costs."

"Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) ("Where the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds [the jurisdictional threshold]."). "Conclusory allegations as to the amount in controversy are insufficient." *Matheson*, 319 F.3d at 1090–91.

SPS, the removing party, asserted in its notice of removal that the amount in controversy for jurisdictional purposes was either $680,000.00, based on the value of the promissory note secured by the Deed of Trust on the Property, or $806,512.74, based on the unpaid balance and other charges on the promissory note. There is no dispute as to whether either of these dollar amounts is accurate. The only question is

whether they are proper measures of the amount in controversy in a complaint seeking only a temporary injunction against foreclosure while a loan modification application is pending.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). The "object of the litigation" in this case is a temporary injunction of the foreclosure process to require SPS to consider Corral's loan modification application. Although cases with similar facts arise frequently in district courts, we have yet to address whether, when the plaintiff seeks only a temporary injunction pending review of a loan modification application, the amount of the indebtedness constitutes the amount in controversy related to that injunctive relief.[2] We now hold that it does not.

---

[2] This may be because generally district courts "have roundly rejected the argument that the amount in controversy is the entire amount of the loan where a plaintiff seeks injunctive relief to enjoin a foreclosure sale *pending a loan modification*." *Vergara v. Wells Fargo Bank, N.A.*, No. SACV 15-00058-JLS (RNBx), 2015 WL 1240421, at *2 (C.D. Cal. Mar. 17, 2015) (emphasis in original) (citing cases); *see also Turner v. Wells Fargo Bank, N.A.*, No. 216CV01095TLNKJN, 2017 WL 2214961, at *3 (E.D. Cal. May 19, 2017); *Ulshafer v. PHH Mortgage Co.*, No. 2:16-cv-01141-MCE-CKD, 2017 WL 896290, at *4–5 (E.D. Cal. Mar, 6, 2017); *Beltran v. Wells Fargo Bank, N.A.*, No. CV-16-06624-RGK(SSx), 2016 WL 6902099, at *3 (C.D. Cal. Nov. 23, 2016); *Perryman v. JPMorgan Chase Bank, N.A.*, 1:16-cv-00643-LJO-SKO, 2016 WL 4441210, at *5–6 (E.D. Cal. Aug. 23, 2016); *Ortiz v. Seterus, Inc.*, No. LA CV16-01110 JAK (JEMx), 2016 WL 2968007, at *3, 2016 WL 2968007 (C.D. Cal. May 18, 2016); *Cephas-Boyd v. Shellpoint Partners, LLC*, No. EDCV 16-386-JGB(KKx), 2016 WL 1600828, at *4 (C.D. Cal. Apr. 21,

"Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). Thus, to satisfy its burden of establishing the amount in controversy related to the temporary delay in foreclosure sought by the complaint, SPS was required to establish, by a preponderance of the evidence, that the benefit to Corral of the delay would exceed $75,000, or that the cost to SPS from the delay would exceed $75,000. Neither of these amounts equals the original amount of the note or the unpaid balance of the debt. The length of the temporary injunction would almost certainly be minimal, and in any event would be primarily within SPS's control because it is based on the amount of time it would take for SPS to review Corral's loan modification application. After SPS completed its review of the application, the injunction would end and either (1) SPS and Corral would agree to a loan modification, or (2) SPS would deny the application and be able to proceed with foreclosure. The only pecuniary harm that would be suffered by SPS is the cost of having to review Corral's loan modification application and of having to delay foreclosure for the length of that review. Meanwhile, the only pecuniary benefit that would be gained by Corral would be derived from temporarily retaining possession of the

2016). These remand orders based on lack of subject matter jurisdiction were not appealable. 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."); *see also Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127–28 (1995) ("As long as a district court's remand is based on a timely raised defect in removal procedure or on lack of subject-matter jurisdiction–the grounds for remand recognized by § 1447(c)–a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d).").

Property while SPS reviews the application. Neither of these amounts even approaches the full amount of indebtedness on the property because neither outcome results in Corral being relieved of the obligation to repay the debt to SPS.

This circumstance is unlike cases in which plaintiffs seek to enjoin foreclosure indefinitely as part of an effort to quiet title to the property or rescind their loan agreements. In a recent case, we noted that the plaintiff's "Quiet Title Action" satisfied the amount in controversy requirement because "the object in litigation is the property, which was assessed at a value of more than $200,000. . . ." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011). Similarly, in an earlier case where the plaintiffs sought to permanently enjoin foreclosure of their property on the grounds that it was unconstitutional, we held that because "[t]he whole purpose of this action is to foreclose the Bank from selling [the] property in the manner contemplated," the matter in controversy exceeded the jurisdictional minimum under 28 U.S.C. § 1331 based on the market value of the property. *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973).

Our holding here is not inconsistent with *Chapman* and *Garfinkle*. When a plaintiff seeks to quiet title to a property or permanently enjoin foreclosure, the object of the litigation is the ownership of the property. Therefore, the value of the property or the amount of indebtedness on the property is a proper measure of the amount in controversy. Here, unlike in *Chapman*, *Garfinkle*, and the other cases cited by the district court in denying the motion to remand, the object of the litigation is only a temporary injunction while SPS considers Corral's loan modification application. Thus, unlike in these other cases, even if Appellants were to succeed on this

lawsuit, they would not be able to retain possession and ownership of their Property without paying off their debt.

Notwithstanding the foregoing, we do not hold that every case seeking a temporary injunction pending review of a loan modification application does not satisfy the amount in controversy requirement for diversity jurisdiction. We hold only that the amount in controversy in such cases does not equal the value of the property or amount of indebtedness. Parties seeking to establish diversity jurisdiction over such cases may still demonstrate that the amount in controversy requirement is satisfied using other measures, such as the transactional costs to the lender of delaying foreclosure or a fair rental value of the property during the pendency of the injunction. Further, such amounts can be added to any other compensatory damages sought by the plaintiff to determine whether more than $75,000 is in controversy.

Here, however, it is not evident from the face of the complaint that $75,000 is at issue, and SPS, as the party with the burden to demonstrate jurisdiction, did not present any evidence to the district court aside from the amount of indebtedness in opposition to Corral's motion to remand. Accordingly, SPS did not satisfy its burden of establishing subject matter jurisdiction. Therefore, the district court's denial of the motion to remand was erroneous.

## CONCLUSION

Because SPS did not establish that removal was proper, the district court should have granted Corral's motion to remand and was without subject matter jurisdiction to consider SPS's motion to dismiss for failure to state a claim. Accordingly, the district court's denial of the motion to

remand is reversed, its order granting SPS's motion to dismiss is vacated, and this case should be remanded to state court.**[3]**

**REVERSED.**

---

KLEINFELD, Senior Circuit Judge, dissenting:

I respectfully dissent. We held in *Garfinkle v. Wells Fargo Bank* that in a suit to enjoin foreclosure, the amount in controversy is the value of the property sought to be foreclosed.[1] That is the long-established general rule.[2] The district court correctly followed that rule and should be affirmed.

The majority's justification for carving out an exception to the usual rule is based on the assumption that Select Portfolio will soon foreclose on the property after it denies Corral's request for a loan modification. That is speculation, not a pleaded fact. The pleading appears to assume that the loan modification may be granted. The lawsuit would prevent the transfer of title from Corral to Select Portfolio, a financial consequence far in excess of $75,000.

---

[3] Because none of the documents of which SPS sought judicial notice are relevant to this decision, SPS's request for judicial notice is denied as moot.

[1] 483 F.2d 1074, 1076 (9th Cir. 1973).

[2] *See, e.g.*, *id.*; *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (per curiam); *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (per curiam).

This is the second time Corral has thwarted foreclosure despite not paying her mortgage.  Last time, after she sued to stop foreclosure, Select Portfolio agreed to give her 30 days to submit a loan modification request.  She did not do that.  Her justification is that Select Portfolio should have taken the initiative to send her the requisite form, though she did not ask them to send it and she later obtained it anyway.  She sent her modification request long after the 30 day deadline had elapsed.

Select Portfolio then made its second attempt to foreclose, the one at issue now.  Yet it is foiled again.  By artful phrasing of the complaint combined with our new exception to the jurisdictional rule, Select Portfolio is set up for an infinite regress of failed foreclosures.  And even if Select Portfolio succeeds, it faces a likelihood of more administrative effort, and more attorneys' fees, until it gives Corral whatever she turns out to want.  Of course, we cannot know what other barriers to foreclosure Select Portfolio may face—whether from its board, or regulatory authorities, or changes in the real estate market, or its own financial circumstances.  What we do know, without speculation or assumption, is that Select Portfolio tried again to foreclose and has been thwarted again.

The majority accepts the established proposition that "[u]nder the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result *to either party* which the judgment would directly produce."[3]  From Corral's point of view, at best her loan modification will be approved and she will avoid foreclosure—a result worth more

---

[3] *In re Ford Motor Co./Citybank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) (emphasis added).

than $75,000. At worst, she will gain a delay worth less than $75,000. But from Select Portfolio's viewpoint, the injunction prevents it from foreclosing. Maybe another time, after more paperwork back and forth on the loan modification request, it will finally be allowed to foreclose, or maybe it will again be prevented from doing so. Either way, it cannot get the house now, which is what it sought, and the house is worth more than $75,000. If Select Portfolio could foreclose now, it could sell the house in today's market, not some later market.

The statute says "matter in controversy," not "amount in controversy."[4] The "matter in controversy," from Select Portfolio's viewpoint, is title, not merely another delay while it considers the late loan modification request. Foreclosure transfers title. The "value of the object of the litigation"[5] is the value of the house, which all agree is far in excess of $75,000.

In *Garfinkle v. Wells Fargo Bank*, we held that a suit to prevent foreclosure places the property itself in controversy.[6] We did not limit our holding to suits for "permanent" injunctions. We explained that the matter in controversy requirement was met because "[t]he whole purpose of this action is to foreclose the Bank from selling this property in

---

[4] *See* 28 U.S.C. § 1332(a).

[5] *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (per curiam) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).

[6] 483 F.2d 1074, 1076 (9th Cir. 1973).

the manner contemplated."[7]    The reasoning in *Garfinkle* applies equally in the case before us.    The "matter in controversy" in both cases is foreclosure in the manner contemplated, not the value of a speculative amount of time between that foreclosure attempt and some subsequent possible foreclosure.

*Garfinkle* is consistent with the long-established rule that when an injunction goes to a question of property ownership, the value of the property is the amount in controversy. Following *Garfinkle*, we held in *Chapman v. Deutsche Bank National Trust Co.* that in a suit to quiet title, the amount in controversy is the property's value, because the property is "the object in litigation."[8]    *Chapman* cited our holding in *Woodside v. Ciceroni* that "[i]n a suit to quiet title, or to remove a cloud therefrom, it is not the value of the defendant's claim which is the amount in controversy, but it is the whole of the real estate to which the claim extends."[9] Likewise, the Fifth Circuit wrote in *Waller v. Professional Insurance Corp.* that "courts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount in suits for injunctions . . . and in suits to remove a cloud from the title of realty."[10] And the Fifth Circuit followed *Garfinkle* in *Farkas v. GMAC Mortgage, L.L.C.* when it held that if the purpose of a lawsuit is to stop foreclosure, then even if the plaintiff claims

---

[7] *Id.*

[8] 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (per curiam).

[9] 93 F. 1, 4 (9th Cir. 1899).

[10] 296 F.2d 545, 547 (5th Cir. 1961) (citations omitted).

damages below the jurisdictional amount, the value of the property is the amount in controversy because "it is the property itself that is the object of the litigation."[11]

There is no good reason for the majority to distinguish and thereby limit long-established and widely applied circuit law. All today's innovation can do is add a round of unproductive litigation unrelated to the merits when foreclosure and other actions are brought in or removed to federal court. We have turned a simple and predictable rule into a complicated and unpredictable rule.

---

[11] 737 F.3d 338, 341 (5th Cir. 2013) (per curiam).