KLEINFELD, Senior Circuit Judge, dissenting: I respectfully dissent. We held in Gar-finkle v. Wells Fargo Bank that in a suit to enjoin foreclosure, the amount in controversy is the value of the property sought to be foreclosed.[1] That is the long-established general rule.[2] The district court correctly followed that rule and should be affirmed. The majority’s justification for carving out an exception to the usual rule is based on the assumption that Select Portfolio will soon foreclose on the property after it denies Corral’s request for a loan modification. That is speculation, not a pleaded fact. The pleading appears to assume that the loan modification may be granted. The lawsuit would prevent the transfer of title from Corral to Select Portfolio, a financial consequence far in excess of $75,000. This is the second time Corral has thwarted foreclosure despite not paying her mortgage. Last time, after she sued to stop foreclosure, Select Portfolio agreed to give her 30 days to submit a loan modification request. She did not do that. Her justification is that Select Portfolio should have taken the initiative to send her the requisite form, though she did not ask them to send it and she later obtained it anyway. She sent her modification request long after the 30 day deadline had elapsed. Select Portfolio then made its second attempt to foreclose, the one at issue now. Yet it is foiled again. By artful phrasing of the complaint combined with our new exception to the jurisdictional rule, Select Portfolio is set up for an infinite regress of failed foreclosures. And even if Select Portfolio succeeds, it faces a likelihood of more administrative effort, and more attorneys’ fees, until it gives Corral whatever she turns out to want. Of course, we cannot know what other barriers to foreclosure Select Portfolio may face—whether from its board, or regulatory authorities, or changes in the real estate market, or its own financial circumstances. What we do know, without speculation or assumption, is that Select Portfolio tried again to foreclose and has been thwarted again. The majority accepts the established proposition that “[ujnder the ‘either viewpoint’ rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.”[3] From Corral’s point of view, at best her loan modification will be approved and she will avoid foreclosure—a result worth more than $75,000. At worst, she will gain a delay worth less than $75,000. But from Select Portfolio’s viewpoint, the injunction prevents it from foreclosing. Maybe another time, after more paperwork back and forth on the loan modification request, it will finally be allowed to foreclose, or maybe it will again be prevented from doing so. Either way, it cannot get the house now, which is what it sought, and the house is worth more than $75,000. If Select Portfolio could foreclose now, it could sell the house in today’s market, not some later market. The statute says “matter in controversy,” not “amount in controversy.”[4] The “matter in controversy,” from Select Portfolio’s viewpoint, is title, not merely another delay while it considers the late loan modification request. Foreclosure transfers title. The “value of the object of the litigation”[5] is the value of the house, which all agree is far in excess of $75,000. In Garfinkle v. Wells Fargo Bank, we held that a- suit.to prevent foreclosure places the property itself in controversy.[6] We did not limit our holding to suits for “permanent” injunctions. We explained that the matter .in controversy requirement was met because “[t]he whole purpose of this action is to foreclose the Bank from selling this property in the manner contemplated.”[7] The reasoning in Gaifin-kle applies equally in the case before us. .The “matter in controversy” in both cases is foreclosure in the manner contemplated, not the value of a speculative amount of time between that foreclosure attempt and some subsequent possible foreclosure. Garfinkle is consistent with the long-established rule that when an injunction goes to a question of property ownership, the value of the property is the amount in controversy. Following Garfinkle, we held in Chapman v. Deutsche Bank National Trust Co. that in a suit to quiet title, the amount in controversy is the property’s value, because the property is “the object in litigation.”[8] Chapman cited our holding ih Woodside v. Ciceroni that “[i]n a suit, to quiet title, or to remove a cloud therefrom, it is not the value of the defendant’s claim which is the amount in controversy, but it is the whole of the real estate to which the claim extends.”[9] Likewise, the Fifth Circuit wrote in Waller v. Professional Insurance Corp. that “courts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount -in suits for injunctions ... and in suits to remove a cloud from the title of realty.”[10] And the Fifth Circuit followed Garfinkle in Farkas v. GMAC Mortgage, L.L.C. when it held that if the purpose of a lawsuit is to stop foreclosure,. then even if the plaintiff claims damages below the jurisdictional amount,'the value of the property is the amount in controversy because “it is the property itself that is the object of the litigation.”.[11] There is no good reason for the majority to. distinguish and thereby limit long-established and widely appliedr circuit law. All today’s innovation’can do is add a round of unproductive litigation unrelated to. the merits when foreclosure and other actions are brought in or removed to federal court. We have turned a simple and predictable rule into a complicated and unpredictable rule. . In re Ford Motor Co./Citibank (S. Dakota), N.A., 264 F.3d 952, 958 (9th Cir. 2001) (emphasis added). . 483 F.2d 1074, 1076 (9th Cir. 1973). . See, e.g., id.; Chapman v. Deutsche Bank Nat’l Tr. Co., 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (per curiam); Farkas v. GMAC Mortg., L.L.C., 737 F.3d 338, 341 (5th Cir. 2013) (per curiam). . See 28 U.S.C. § 1332(a). . Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002) (per curiam) (quoting Hunt v. Wash. State Apple Advert. Comm’n, 432 U.S. 333, 347, 97 S.Ct 2434, 53 L.Ed.2d 383 (1977)). . 483 F.2d 1074, 1076 (9th Cir. 1973). . Id. . 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (per curiam). . .93 F. 1,4 (9th .Cir. 1899). . 296 F.2d 545, 547 (5th Cir. 1961) (citations omitted). . 737 F.3d 338, 341 (5th Cir. 2013) (per curiam).